(No. 34407.—

THOMAS O. MYERS *et al.,* Appellees, *vs.* THE CITY OF ELMHURST, Appellant.

*Opinion filed January 24, 1958.*

GEORGE E. BILLETT, of Chicago, (ERVIN F. WILSON, of Elmhurst, of counsel,) for appellant.

ALBERT E. JENNER, JR., GILBERT H. HENNESSEY, JR., and PRENTICE H. MARSHALL, all of Chicago, (WILLARD E. CAIN, of Wheaton, and JOHN N. ERLENBORN, of Elmhurst, of counsel,) for appellees.

Mr. CHIEF JUSTICE DAVIS delivered the opinion of the court:

The circuit court of Du Page County entered a decree in this action for a declaratory judgment which found and declared that the zoning ordinance of the city of Elmhurst, defendant, is unconstitutional and enjoined its enforcement, as applied to plaintiffs' property. The trial judge certified that the validity of a municipal ordinance is involved and that the public interest requires a direct appeal to this court.

The defendant contends that the evidence demonstrates that there is room for a fair difference of opinion concerning the reasonableness of its residential zoning classification, as applied to plaintiffs' property, and that its legislative determination is conclusive and should not be disturbed by the courts. Plaintiffs urge that, in view of all the evidence, the single-family-residence restrictions, as presently applied to their property, are arbitrary, unreasonable and confiscatory and bear no substantial relation to the public health, safety, morals, comfort and general welfare; that any reasons which may have heretofore supported residential zoning of their property have ceased to exist in view of subsequent developments, especially the construction by the defendant of a water tower and pumping station just west of their property on property likewise zoned for single-family residences. The resolution of such conflicting views is difficult and, in final analysis, must depend on the facts and circumstances of each case. The legal principles involved are well settled. *La Salle National Bank* v. *County of Cook,* 12 Ill.2d 40; *Wehrmeister* v. *County of Du Page,* 10 Ill.2d 604.

Plaintiffs' unimproved property is located on the south side of St. Charles Road near the westerly limits of the city of Elmhurst. It is rectangular in shape and has a frontage of 400 feet on St. Charles Road and a depth of 200 feet. The property is bounded on the east by West

Avenue and on the west by Scott Street. The easterly portion of the property is level with St. Charles Road, and the westerly third of the tract is about 3 feet lower than Scott Street. St. Charles Road, 66 feet in width, is the principal east-west thoroughfare of the city. Scott Street, which enters St. Charles Road from the south only, and West Avenue which intersects it, are each north and south streets, 50 feet in width. The Tri-State Highway (Route 83), a north-south traffic artery 200 feet in width, intersects St. Charles Road 125 feet west of Scott Street. On the tract of land between this street and the highway, the defendant constructed a bulb shaped water tower and a pumping station. The tower has a capacity of 500,000 gallons, is 100 feet high and has a base 36 feet wide. These structures, built in 1953, located on the west side of Scott Street, are directly across from the subject property. During the same year, the State of Illinois constructed a truck weighing station at the southwest corner of the intersection of St. Charles Road and Route 83, which serves all trucks traveling over adjacent U. S. Route 30, State Route 64, and U. S. Route 20. West Avenue is the service ingress and egress to the Elmhurst Chicago Stone quarry, located thereon one-half mile north of St. Charles Road, and all the ready-mix, sand, and gravel trucks travel over that street, or over both West Avenue and St. Charles Road upon entering and leaving the quarry. At the time the water tower, pumping station and the weighing station were constructed, those properties, like plaintiffs' property, were zoned for single-family residences. Heavy traffic prevails in this vicinity, the count in a 24-hour period on St. Charles Road being 12,000 motor vehicles and 18,000 on Route 83. The traffic at the intersection of these two highways is controlled by six stop-and-go lights.

Commercial and business uses exist along the north and south sides of St. Charles Road west of Route 83 to Villa Avenue, which is the westerly boundary of the defendant

north of St. Charles Road, and exclusively dominate the north side of St. Charles Road opposite plaintiffs' property between Route 83 and West Avenue. These include a gasoline filling station, automobile agency and garage, school bus parking lot and a large retail food store. In addition, plans have been formulated to construct a 25-store shopping center to the north and around these commercial uses, which will provide an integrated shopping area for the neighborhood. Northeast of the subject property, across St. Charles Road, are located the St. Charles West Apartments containing 320 rental apartment units, 56 cooperative apartment units and 244 garages.

Immediately south of the subject property between Scott and West streets are 23 single-family residences in an area extending south to Surf Street. The water reservoir of defendant is located south of that street, and just south of the reservoir is the right of way of the Chicago Great Western Railway. The area east of the subject property south of St. Charles Road is devoted largely to single-family residences. The main commercial district of the city is located near the intersection of York Street and the Chicago and North Western railway tracks about 1¼ miles northeast. The area between is devoted largely to single-family residences but includes the acreage tracts upon which are located York High School and Elmhurst College. There is a small commercial area at the intersection of Spring Road and the Chicago Great Western right of way about ½ mile southeast of plaintiffs' property and a more extensive business center 1¼ miles southeast where York Street crosses this right of way.

The zoning map of the city indicates that all property, both north and south of St. Charles Road, is predominately devoted to single-family residences, the principal exceptions being the above mentioned areas, developed to commercial uses. In 1950, plaintiffs acquired this unimproved property, which, since the inception of zoning in 1924,

has been classified for single-family use. In 1953, after construction of the water tower, pumping station, and truck-weighing station, they petitioned the city plan commission to recommend that the zoning of the property be changed to commercial and to permit the construction of an office building to be occupied as real-estate and doctors' offices. The plan commission approved the petititon upon condition that the property be replatted to provide a building set-back line, 40 feet from St. Charles Road, and the dedication of an alley 20 feet wide along the south property line. The city council approved the replat on February 1, 1954, but both the zoning board of appeals and the council declined to follow the plan commission's recommendation that the property be rezoned to permit the proposed uses. Again in 1955 the plan commission recommended rezoning to a commercial classification but the zoning board of appeals and city council again refused to concur. Plaintiffs' action for a declaratory judgment followed.

Among the witnesses called by plaintiffs were four real-estate appraisers and brokers having extensive experience in the city of Elmhurst and surrounding territory. They testified that the property in question had a value of $12,000 to $20,000 for residential purposes, and from $70,000 to $80,000 for commercial purposes, and that it was entirely unsuited for residential development. Evidence established that over the past ten years the property had been listed with three different real-estate brokers and shown to prospective purchasers many times; and that it had been offered as residential property at a price as low as $30 per foot without an offer to purchase. Plaintiffs' witnesses testified that in their opinion the highest and best use of the property was commercial; that the proposed use would not in any way diminish the value of surrounding properties, but would actually increase those values. These opinions referred particularly to the 23 single-family residences to the south which were described as having values

ranging from $6,500 to $12,000. A lawyer-member of the city council testified that he had lived about a block northeast of this property and that in his opinion it was not suitable for residential use because of the noise of traffic and the odors emanating from the Villa Park and Elmhurst sewage disposal plants located some distance to the south.

The defendant's only witness on the question of values, a Chicago real-estate broker, testified that in his opinion the residential value of the subject property is from $24,000 to $30,000 and its commercial value from $60,000 to $70,000; that the highest and best use of the property was residential; that he had a "feeling" that if the property were put to a commercial use, nearby residential properties would become harder to sell; and that there "might be" a depreciation of 10 to 20 per cent, but that would be "problematical." A Chicago zoning and planning expert witness for the defendant, testified that in his opinion the highest and best use of the property was for residential purposes, but expressed no opinion on comparative values. He further stated that the establishment of a business on the plaintiffs' property would materially lessen the desirability of surrounding residences. Three residents of the immediate neighborhood testified that they had not been bothered by odors from the sewage treatment plants during the past 3 or 4 years. They also denied that they were disturbed by traffic noises.

Among the facts to be taken into consideration in adjudging the validity of a given zoning restriction are the character of the neighborhood, existing uses and zoning of nearby property, the amount by which property values are decreased, the extent to which this diminution of value promotes the health, safety, morals or general welfare of the public, the relative gain to the public as compared to the hardship imposed on the individual property owner, the suitability of the subject property for the purpose for

which it is zoned, and the length of time under the existing zoning that the property has remained unimproved, considered in the context of land development in the area. (*La Salle National Bank* v. *County of Cook*, 12 Ill.2d 40; *Wehrmeister* v. *County of Du Page*, 10 Ill.2d 604; *Krom* v. *City of Elmhurst*, 8 Ill.2d 104.) No one factor is controlling but each must receive due consideration. (*La Salle National Bank* v. *County of Cook*, 12 Ill.2d 40.) The fact that there may be a difference of opinion among expert witnesses does not require a finding that the reasonableness of the ordinance is debatable. (*La Salle National Bank* v. *County of Cook*, 12 Ill.2d 40.) Though there is a presumption of validity in favor of the legislation, where it is clearly and affirmatively shown that the zoning ordinance, as applied, is unreasonable and confiscatory, a court of review should not hesitate to declare it unconstitutional. *Northern Trust Co.* v. *City of Chicago*, 4 Ill.2d 432.

The evidence clearly shows that the ordinance substantially diminishes the value of plaintiffs' property. According to defendant's witnesses, the residential restrictions imposed reduce the value of the property from $60,000 to $30,000, or 50 per cent. Plaintiffs' witnesses testified that the zoning limitations lowered the value from $80,000 to $12,000, or 85 per cent. While the hardship to plaintiffs is thus apparent, the gain or detriment to nearby residential owners is uncertain and enigmatic. Plaintiffs' witnesses were unanimously of the opinion that the value of those residences would actually be increased "if the commercial uses were permitted," while defendant's witnesses thought there might be some diminution in value, but their testimony in this regard was not positive. Where the evidence shows a destruction of property value by application of the ordinance, the legislation may be justified, but only if it appears that it substantially promotes the public health, safety, morals or general welfare and is necessary for that reason. *Krom* v. *City of Elmhurst*, 8 Ill.2d 104, 115.

The evidence establishes that the property has little suitability for the purpose for which it is zoned. Though it has been available for residential development at all times, there have been no offers to buy even at a price of $12,000, the lowest value placed upon the land for residential purposes by any of the witnesses. Concurrently, the city has enjoyed a residential building boom, with extensive construction in the areas south and east of the property and in other sections. "The law does not require that the subject property be totally unsuitable for the purpose classified, but it is sufficient that a substantial decrease in value results from a classification bearing no substantial relation to the public welfare." *La Salle National Bank* v. *County of Cook,* 12 Ill.2d 40, 48.

The maps, exhibits and testimony clearly establish the development of commercial uses around the intersection of Route 83 and St. Charles Road, including the extensive uses prevailing northeast of the intersection, and the water tower, pumping station and the truck-weighing station to the southwest. The property at the northwest corner of the intersection is now vacant but is shortly to be developed into a modern gasoline station and garage. Commercial uses also obtain west of Route 83 on both sides of St. Charles Road and the proposed shopping center will extend the commercial area northeast of the intersection some 1300 feet. The water tower, pumping station and weighing station were constructed on properties zoned for "single family" residences.

Defendant now urges that St. Charles Road has been the historical dividing line between commercial uses on the north and residential uses on the south, yet did not acknowledge this alleged line of demarcation when constructing its water tower and pumping station and permitting the State to erect its weighing station. The establishment of these nonresidential uses, undoubtedly affected the sale of plaintiffs' property for residential purposes. From the evidence

we conclude that unless a commercial use is permitted, the property will, in all likelihood, remain unimproved. Such a result is unsatisfactory from both aesthetic and tax considerations. (*Krom* v. *City of Elmhurst*, 8 Ill.2d 104.) As we observed in the *Krom case,* zoning ordinances restricting a certain area to residential use have been held void as to property located in such area, but so situated in its relation to other commercial uses as to render it peculiarly unattractive and of little value for residential purposes.

Moreover, the record in this case is almost devoid of evidence from which it is reasonable to infer that there will be any substantial gain to the public if the present residential classification is maintained. The only reason suggested for the present restriction is the possibility of increased traffic with attendant danger to pedestrians crossing St. Charles Road. But the proof clearly shows that the danger already exists and there is little reason to believe that the proposed use would substantially augment it. The large shopping center will increase the commercial uses in both area and intensity, the truck weighing station will continue to produce heavy traffic in the vicinity of this busy intersection, and the delivery of ready-mix concrete and sand and gravel from the Elmhurst Chicago Stone quarry will persist. If we give consideration to the size and the proposed use of plaintiffs' property, it is reasonable to conclude that the additional traffic generated by such use will indeed be a minor factor in the overall picture. Any gain to the public from a continuation of present restrictions is small when compared to the hardship imposed upon the property owners. Where such a situation prevails the courts are fully justified in declaring the ordinance unreasonable, confiscatory and void. (*Krom* v. *City of Elmhurst,* 8 Ill.2d 104; *Chicago Title and Trust Co.* v. *Village of Franklin Park,* 4 Ill.2d 304; *Midland Electric Coal Corp.* v. *County of Knox,* 1 Ill.2d 200.) This is especially true

when the proof shows that the values of surrounding properties will not be seriously affected by the proposed use.

The determination of the trial court is, of course, always subject to review, but its findings should not be disturbed unless they are against the manifest weight of the evidence. (*Northern Trust Co.* v. *City of Chicago,* 4 Ill.2d 432.) Here the testimony was conflicting. The credibility accorded the witnesses, as well as the weight of their opinions concerning values, may well have been the determining factors in the trial court's decision. The position of the trier of facts is superior to that of the reviewing court in such situation. (*La Salle National Bank* v. *County of Cook,* 12 Ill.2d 40.) The decree of the circuit court of Du Page County is sustained by the evidence and is affirmed.

*Decree affirmed.*