(No. 34754.—)

FIRST NATIONAL BANK AND TRUST COMPANY OF EVANSTON, Appellee, *vs.* THE COUNTY OF COOK, Appellant.

*Opinion filed September 18, 1958—Rehearing denied Nov. 14, 1958.*

Benjamin S. Adamowski, State's Attorney, of Chicago, (Francis X. Riley, and Edwin A. Strugala, of counsel,) for appellant.

Ezra L. D'Isa, of Chicago, (Charles D. Snewind, of counsel,) for appellee.

Mr. Justice Klingbiel delivered the opinion of the court:

The county of Cook appeals from a decree in a declaratory judgment action in the circuit court of Cook County holding its zoning ordinance unconstitutional and void as applied to the property of the plaintiff.

The land in question consists of about five acres situated at the southeast corner of an intersection of two highways, in an unincorporated area west of the village of Glenview. The plaintiff bank, holding title to a tract of approximately 22 acres classified in an F (Farming) district, petitioned the board of zoning appeals that roughly 16 acres of the tract be rezoned as R-4 (Residence 10,000 square feet). The board of commissioners approved the zoning board's recommendation and the petition was granted. At the same time the plaintiff applied to the board of zoning appeals for a rezoning of the remaining portion of the tract, consisting of the five acres involved here, from F (Farming) to B-1 (Business), so that a service or shopping center might be constructed thereon. This relief was denied, and having exhausted available administrative remedies the plaintiff brought the present action to declare the ordinance void in its application to the property. The cause was referred to a master, who recommended the complaint be dismissed. The circuit court sustained exceptions to the report, and held that the ordinance as applied to the plaintiff's property is unconstitutional and void. The county appeals directly to this court, the validity of the ordinance being involved and the trial judge having certified that in his opinion the public interest so requires.

The tract in dispute extends on its north line about 450 feet along Central Road, a paved secondary State highway having moderately light traffic. Its west line fronts on Greenwood Road, a paved two-lane highway running north and south, and is approximately 600 feet long exclusive of an acre piece on which is located an electrical transformer or power station. The power distributing station is situated some 200 feet south of Central Road in an area 65 feet in length along Greenwood and 191 to 200 feet in depth to the east. It distributes to consumers in the area electrical power received from high-voltage lines, and the unit is enclosed by a chain link fence 55 feet square and six feet high, extended another 18 inches by barbed wire. The station and acre of land upon which it is located are owned by a public utility company.

The subject property was originally operated as a farm but has not been so used for many years. Along Central Road about 300 feet east of the corner there is an old barn, and farther east is situated a two-story farm house which has been converted into a two-flat building. Aside from these structures, the land appears to be vacant and unproductive. A frame residence and rear barn are located eastward another 750 feet, beyond which are stretches of vacant land and about 13 new brick homes to a point about a half mile from the intersection. Extending south from the intersection of Central and Greenwood the area is vacant for a distance of 1,123 feet from the south line of the power station property. About five homes then appear, followed by another stretch of vacant land for a distance of 1,400 feet to Milwaukee Avenue, about one half mile from the Greenwood-Central intersection. Milwaukee Avenue is a major four-lane highway running diagonally northwest and southeast. The entire area to the southeast of the subject property is subdivided for residences, with some homes already built. The territory southwest is mostly vacant but completely subdivided. There are some twenty homes in various

stages of construction and eight completed models are situated south along the west side of Greenwood about 300 feet from Central Road. From the southwest corner of the Greenwood-Central intersection a six foot chain link fence runs a distance of 165 feet south and 25 feet west. All the land west to Milwaukee Avenue is vacant.

On the northwest corner of the intersection there is a gasoline station recently completed, and beyond it to the northwest a subdivision is built up with some 300 homes. Additional residences and a church are situated north of the corner along the west side of Greenwood until the intersection with Glenview Road is approached, about one-half mile distant. At that location there are a realty office, a barbershop, a radio-television repair and sales shop, and a restaurant. A commercial greenhouse is situated on the northwest corner of the Glenview-Greenwood intersection, and from the southeast corner proceeding south appear a gasoline station, drug and hardware stores, and a supermarket. Directly north of the subject property, across Central Road, there is a delicatessen and grocery store, to the east of which are homes, a public park and a golf course. The entire area to the northeast is improved with homes built on an 80-acre subdivision.

Virtually the entire area surrounding plaintiff's five-acre tract is classified as R-4 (Residence lots having not less than 10,000 square feet). Zoned for business use are the northwest and northeast corners of the Greenwood-Central intersection, where the gasoline station and delicatessen store are located, the store areas south of the Glenview-Greenwood intersection, the southeast corner of the Milwaukee-Central intersection, and certain areas fronting on Greenwood at and near its intersection with Milwaukee Avenue. Excepting the areas zoned for business, in the surrounding territory within a one-half mile radius, everything is residential. No property other than the tract involved here is zoned in an F (Farming) district.

In an F district the only uses which may be established are those permitted in R-3 districts and in addition the following: animal farms, apiaries, mushroom barns, greenhouses, nurseries, dog kennels, removal of soil, sale of products from any of the above uses, storage of farm products, recreational camps, riding stables, veterinary establishments, racing establishments, filling of holes, picnic grounds, athletic fields, skeet or trap shooting, radio stations, institutions, cemeteries, and temporary carnivals. Under the permitted residence use, as restricted in the R-3 districts referred to, the residence must be built on a lot not less than 100 feet in width and having a minimum of 20,000 square feet in area. In an R-4 district the residence may be built on a lot not less than 60 feet wide with a minimum of 10,000 square feet in area. Except for some lots in the Long subdivision, located to the east of plaintiff's tract, all of the property in the immediate vicinity has been subdivided into residential or business lots containing about 10,000 square feet. In some places variations have been granted, permitting the construction of homes on lots approximately 7,500 square feet in area. The lots in the Long subdivision, originally one-half acre, are now mostly 10,000 square feet, although some on which houses have been built remain a half acre.

It is not disputed that the subject property would be of substantially greater value for business purposes, or for residential lots of less than 20,000 square feet in area; that the surrounding area is being rapidly developed as a suburban community with a growing population; that new homes are constantly under construction; and that except for the subject property the area is predominantly residential under the R-4 classification (10,000 square feet). There is no other property in the immediate vicinity zoned in an F (Farming) district, and none is used for any of the purposes enumerated in the F (Farming) regulation.

The question whether a zoning restriction is arbitrary and unreasonable in its application to particular property is a judicial one, and each case must necessarily be decided on its own particular facts. Among the factors to be given consideration are the use and zoning of nearby property, the character of the neighborhood, the extent property values are diminished, and the relative gain to the public as compared to the hardship imposed upon the owner. (*Krom* v. *City of Elmhurst,* 8 Ill.2d 104.) A zoning classification will be upheld if it bears a substantial relation to the public health, safety, comfort, morals and welfare (*Bolger* v. *Village of Mount Prospect,* 10 Ill.2d 596); and where the question of its reasonableness as applied to a particular parcel of property is open to a fair difference of opinion, the legislative judgment of the zoning authorities should be followed. (*County of Du Page* v. *Henderson,* 402 Ill. 179.) The presumption of validity is overcome, however, when it is shown that there is no reasonable basis in public welfare requiring the restriction and the resulting loss. (*La Salle National Bank* v. *County of Cook,* 12 Ill.2d 40.) Where the gain to the public is small as compared to the hardship imposed upon the owner, no valid basis for the exercise of police power exists. *Petropoulos* v. *City of Chicago,* 5 Ill.2d 270; *Midland Electric Coal Corp.* v. *County of Knox,* 1 Ill.2d 200.

Upon full consideration of the facts and circumstances in this case we think the circuit court was justified in finding the ordinance unreasonable and arbitrary in its application to plaintiff's property. It is evident that the classification is not in keeping with the development trend in the area and the character of nearby properties. The requirement of 20,000 square feet for residence use is unrelated to the use and zoning of other property in the area and is unsupported by any relevant difference in the character and location of the tract. *Honeck* v. *County of Cook,* 12

Ill.2d 257, relied upon by the defendant, is distinguishable. In that case an owner whose property was zoned for residence use on plots of not less than five acres desired to sell it in smaller lots, and contended the classification was arbitrary because other lands in the immediate vicinity were zoned for use in plots of one acre or less. In upholding the ordinance this court pointed out that the land in question was hilly, rolling, and full of ravines, and was unsuitable for the proposed use. There is no evidence in the case at bar, on the other hand, showing any characteristics distinguishing plaintiff's property from the surrounding properties zoned as R-4, where residences may be located on plots not less than 10,000 square feet in area.

An examination of the evidence also fails to disclose any consideration of public welfare to justify exclusion of the proposed business use. The rapid building development in the area and the accompanying population growth indicate a need for additional shopping facilities; and while the evidence is conflicting as to whether it is more desirable that a shopping or service center be located on the perimeter of a residential community rather than at its center, the presence of existing business uses on the northwest and northeast corners of the intersection adjoining the subject property makes it doubtful that the proposed use would substantially diminish the value of nearby residential properties. Certainly a shopping center would be less objectionable than an animal farm, dog kennel, or other use permitted under the present classification. Where the evidence shows a destruction of property value by application of an ordinance it can be justified only if it substantially promotes the public health, safety, morals, or general welfare. (*Krom* v. *City of Elmhurst,* 8 Ill.2d 104.) It is evident that the F (Farming) classification decreases the value of plaintiff's property, and the record contains virtually no evidence from which it could be reasonably inferred that there will be any substantial gain to the public if such classi-

fication is maintained. To show an ordinance unreasonable and arbitrary in its application, the law does not require that the land be totally unsuitable to the use for which it is classified. It is sufficient that a substantial decrease in value results from a classification bearing no substantial relation to the public welfare. *La Salle National Bank* v. *County of Cook*, 12 Ill.2d 40.

Considering the evidence in its entirety we think the circuit court was justified in declaring the ordinance void in its application to the subject property. The judgment is therefore affirmed.

*Judgment affirmed.*