Vito Fiore and Della Fiore, His Wife, Plaintiffs-Appellees, v. City of Highland Park, a Municipal Corporation and Body Politic of the State of Illinois, Defendant-Appellant.

Gen. No. 65–150.

Second District.

October 28, 1966.

Rehearing denied November 30, 1966.

Thomas H. Compere, Corporation Counsel, of Highland Park, for appellant.

John F. Grady, of Waukegan, for appellees.

MR. JUSTICE DAVIS delivered the opinion of the court.

Plaintiffs, Vito and Della Fiore, brought this suit against the City of Highland Park seeking a declaratory judgment that the municipal zoning, as applied to their property, was invalid. After a full hearing, the trial court entered such judgment and the defendant City has appealed.

Plaintiffs' property consists of approximately 21 acres, purchased in 1947 for $16,500. Five of the 21 acres are not included in this lawsuit. The plaintiffs maintained their residence and conducted a nursery operation on about seven or eight acres of this land and the balance of the land has remained idle. When the plaintiffs purchased the land, part of it was zoned "A, Country Estate" —a residential use—requiring a minimum lot size of three acres, and the other part "B–1"—also a residential use—requiring a minimum lot size of 20,000 square feet.

The west edge of the tract, approximately 750 feet in length, fronts on Skokie Highway—a highly travelled four-lane arterial highway—which offers direct access to plaintiffs' property to northbound traffic only. The land immediately across the highway is zoned "I" industrial and is vacant except for several advertising signboards. Across the highway and immediately to the south of the tract in question, are a car wash and two gasoline service stations. The "I" industrial zoning across the highway would permit apartment or office and research use, as well as the light industrial or commercial use.

Immediately to the north is the Bob O'Link golf course. To the north of that is the Sunset golf course and, adjoining the highway, a tract of land owned by the Encyclopedia Britannica. The latter tract consists of approximately 10 acres and is either zoned "G–1, Office, Research and Compatible Use" or is intended for such use. It is undeveloped, and the encyclopedia company is attempting to sell it. To the east of the land in question is a tract owned by the park district, which is unimproved. Immediately to the south, adjoining the highway, is a 6-acre vacant piece of land referred to as the "Johnson" tract. To the south of this, and adjoining the 5 acres of plaintiffs' land which is not a part of this suit, is a high-class residential development. Plaintiffs' 5-acre parcel of land which is not a part of this suit is zoned residential

65

■■■■■■■■

and connects with the land in litigation in such a manner that it is referred to herein as an "axe handle." Most of the general area, as most of the City of Highland Park, is developed with single-family residences.

The plaintiffs in December of 1963 filed a petition with the defendant seeking to have 300 feet in width of their land along Skokie Highway rezoned "G–1," for office and research use, and the balance of the 16-acre tract rezoned "F" for multiple-family construction. Hearings were held in February and March of 1964 but no findings or recommendations were made by the City Plan Commission. In June of 1964, the Plan Commission indicated it would hold new hearings on the plaintiffs' petition to consider the rezoning of these premises, along with other property along Skokie Highway, as a part of an overall plan. The plaintiffs then instituted this suit. Subsequently, the City rezoned all of the plaintiffs' land here in question, for office and research use, thus denying their petition insofar as it sought to have a part of their land rezoned for apartment use.

As a threshold question, we must first examine the defendant's contentions that the filing of this suit before the City Plan Commission had concluded its hearings, and the presentation of different and additional evidence at the trial from that presented at the legislative hearings, contravenes the doctrine that the property owner must exhaust administrative remedies before seeking a declaratory judgment, as set forth in Bright v. City of Evanston, 10 Ill2d 178, 180, 181, 139 NE2d 270 (1957).

This is not an administrative review proceeding and the presentation of evidence bears no relation to the Bright rule. As a practical matter, the evidence required to prevail before the zoning body is often different, both as to quantity and nature, than that necessary to sustain the burden of proof subsequently in a court of law. Generally, an adverse ruling by the administrative or legislative agency would tend to place the landowner at a

66

disadvantage. Under such circumstances, we would expect plaintiffs to offer somewhat different evidence in the trial before a court of law than that presented before the Plan Commission, and find no reason to preclude new evidence as such, if not otherwise objectionable.

■ Subsequent Supreme Court decisions have clearly indicated that the Bright rule is not jurisdictional. It is an expression of judicial policy which seeks to assure the local authority the opportunity of correcting errors and settling disputes at that level, thus avoiding the delay and expense of judicial intervention. Westfield v. City of Chicago, 26 Ill2d 526, 528, 187 NE2d 208 (1963). Plaintiffs here sought relief from the local authority, which either refused to act on its petition, or substituted the Commission's overall plan for rezoning the land in the area for the specific relief sought by plaintiffs' petition. After suit was filed and long prior to the trial of this cause, the Plan Commission acted on its own overall plan in a manner which denied the zoning sought by plaintiffs. Under these circumstances, to require plaintiffs to proceed further before the Plan Commission would have been a useless act. Such futility is not the purpose of the Bright doctrine. Van Laten v. City of Chicago, 28 Ill2d 157, 159, 160, 190 NE2d 717 (1963).

It would serve no useful purpose to reiterate here the oft-repeated factors to be considered in determining whether a given zoning ordinance is invalid as applied to particular property. See: Myers v. City of Elmhurst, 12 Ill2d 537, 543, 544, 147 NE2d 300 (1958); La Salle Nat. Bank of Chicago v. County of Cook, 12 Ill2d 40, 46, 47, 145 NE2d 65 (1957); Hoffmann v. City of Waukegan, 51 Ill App2d 241, 244, 201 NE2d 177 (1964). Such factors will be referred to herein insofar as they are relevant to the determination of this case.

As noted, this case comes to us in a somewhat different posture than most zoning cases. After the plaintiffs had filed their petition to rezone their property, the City

rezoned this land, along with other land along the east side of Skokie Highway, "G–1, Office, Research and Compatible Use" (hereinafter called "O & R"). The City's action at this time was a part of an overall plan as to this area and amounted to a denial of plaintiffs' petition.

Plaintiffs' basic contention is that their property is rendered virtually useless by the O & R zoning, and that such zoning ordinance bears no substantial relationship to the public welfare. The evidence indicates that the City of Highland Park has little land that is presently being used or developed for office and research use; and that this type of land use has developed extensively in the area northwest of Chicago, in the direction of the O'Hare airport, rather than in the area due north of Chicago and in the vicinity of the City of Highland Park.

The Encyclopedia Britannica property, situated a short distance north of the plaintiffs' property, has been offered for sale as O & R property since 1961 and virtually no inquiries have been received. The same can be said for other O & R land in the area, except that as to the other land, there have been less extensive promotional activities in attempting its sale. The same factual circumstances exist relative to the vacant land across the highway, which can be used for office and research purposes.

The defendant argues that the Encyclopedia Britannica land has not been sold because the asking price is too high. It would seem, however, that if the land were desirable for O & R use, the intensive efforts which were made seeking its sale, would at least have produced some offers to test the firmness of the asking price. Also, a real estate broker who was engaged to sell the land, sent out 7,500 brochures to potential purchasers, describing the property without mention of the price. Yet, no inquiries were received.

The plaintiffs have made a rather intensive, but brief, effort to promote the sale of their land under its O & R zoning, and while it may be questioned whether they truly

desired to sell their land as O & R, their efforts—which appeared both substantial and sincere—likewise brought no inquiries of substance. There appears little need within this community, immediate or potential, for the O & R zoning classification given to plaintiffs' land.

From the evidence adduced, it appears that the failure of office and research development in the City of Highland Park may be attributed to a shortage of labor supply for such business concerns, a lack of housing for employees of such concerns, and an inadequacy of public transportation in the area. The restrictions placed by the City of Highland Park under its O & R zoning ordinance also drastically limit the attractiveness of such land for potential O & R development.

Under the defendant's zoning restrictions, the minimum lot size for O & R use is four acres; buildings cannot occupy more than 30 percent of the lot; the front yard must be at least 150 feet in depth with no parking permitted; side and back yards must be at least 50 feet; and the building height may not exceed 30 feet. The ordinance further provides that none of the following activities may be done in any building located within 500 feet of a residential zone, to-wit: testing, storing, cleaning, repairing or servicing. This provision is especially significant with reference to the plaintiffs' land because of its proximity to residential zones, and these restrictions would render only a small portion of the land available for the O & R use to which a majority of such potential O & R users would put the land. As a result, plaintiffs' land is rendered highly unmarketable by the defendant's zoning.

The restrictive effect of the above provisions is graphically portrayed by the following exhibit, which was admitted in evidence and which indicates the size and location of O & R buildings permitted under such ordinance with reference to plaintiffs' land and the adjoining properties.

69

70

■ We recognize that the zoning ordinance adopted by the defendant is presumed valid, and the burden of showing it unreasonable and oppressive, as applied to plaintiffs' land, rested upon them. Camboni's, Inc. v. Du Page County, 26 Ill2d 427, 432, 187 NE2d 212 (1963); First Nat. Bank of Lake Forest v. County of Lake, 7 Ill2d 213, 225, 130 NE2d 267 (1955). In challenging the ordinance's validity as applied to their property, the burden was on the plaintiffs to overcome this presumption, and to prove by clear and convincing evidence that the ordinance was unreasonable and unrelated to public health, safety or welfare. Bennett v. City of Chicago, 24 Ill2d 270, 273, 274, 181 NE2d 96 (1962); Hoffmann v. City of Waukegan, 51 Ill App2d 241, 244, 201 NE2d 177 (1964).

■ Due to this presumption, if it appears from all of the evidence that there is justification for a legitimate difference of opinion as to the reasonableness of the ordinance, the legislative judgment of the City must then be upheld. Urann v. Village of Hinsdale, 30 Ill2d 170, 175, 195 NE2d 643 (1964); First Nat. Bank of Lake Forest v. County of Lake, 7 Ill2d 213, 226, 130 NE2d 267 (1955); Bowler v. Village of Skokie, 57 Ill App2d 321, 325, 207 NE2d 117 (1965). However, the fact that there is a difference of opinion among the witnesses—lay and expert—, does not mean that the court must find that the reasonableness of the ordinance is debatable and, hence, uphold the ordinance. In cases of this nature, a court must expect differences of opinion. It is for the court to determine from all of the facts whether the differences of opinion are reasonable and justifiable. Myers v. City of Elmhurst, 12 Ill2d 537, 544, 147 NE2d 300 (1958); La Salle Nat. Bank of Chicago v. County of Cook, 12 Ill2d 40, 47, 145 NE2d 65 (1957).

■ To sustain the validity of a zoning classification, it must bear a substantial relation to the public health, safety, comfort, morals or general welfare. Marquette Nat. Bank v. County of Cook, 24 Ill2d 497, 501, 502, 182

71

NE2d 147 (1962) ; First Nat. Bank & Trust Co. of Evanston v. County of Cook, 15 Ill2d 26, 31, 153 NE2d 545 (1958). We are of the opinion that the trial court was correct in finding no such relation here. The community need for such zoning, present or future, was not present. There was other suitable land so-zoned, or at least zoned so as to permit office and research use, among others. The lack of interest in such development in this community indicated that presently the land available for such use was more than adequate.

Nor did the zoning appear to be the result of careful and thoughtful planning, as urged by the defendant. The parcel of land immediately south of plaintiffs' and designated on the exhibit as the "Johnson" tract, was rezoned O & R at the same time as plaintiffs' land. Yet because of the 500-foot setback from residential zones required of buildings to be used for the most common O & R usages, no part of this land may be used for such O & R usages, even though it is so-zoned. It appears from the record that this limitation was not the result of careful planning but, rather, of oversight. The setback, parking and yard restrictions, as applied to the properties on the exhibit, likewise indicate inadvertent planning.

As to the surrounding area, the O & R rezoning adopted by the defendant somewhat diminished in value the single-family residential properties to the south. It had no adverse effect on the park district land to the east, the Bob O'Link or the Sunset golf courses to the north, the Encyclopedia and other lands further north, or the industrial and residential lands west of Skokie Highway. The apartment use to which the plaintiffs seek to devote the land, affects the surrounding area in much the same manner. The only difference is that defendant's witnesses testified that this proposed use would have a greater adverse effect on the nearby residential area than would the O & R use. There was no evidence, however, as to the quantity of this adverse effect.

72

The uses and zoning of the surrounding areas do not dictate that either the O & R or the apartment zoning is more suitable for the property in question; and it cannot really be said that characteristics of the surrounding area suggest one use over the other. This is true because of the absence of a pattern which suggests the use to which this land should be put, and due to the lack of evidence of significant harm to the surrounding area by either the O & R or apartment use of this land.

It is fair to conclude from the record that there is a need for additional apartment facilities in the community. The potential developer of plaintiffs' land—the real party in interest—has contracted to purchase plaintiffs' land for $250,000 conditioned upon obtaining the rezoning. Defendant's own witnesses concede that the type of apartment complex contemplated would be highly desirable if located in the right place, and there is no showing in the record that plaintiffs' land was not in the right place. Clearly, in view of the apparent lack of need and interest in O & R land in the community, coupled with the severe effects of the setback restrictions on plaintiffs' land, there cannot be anticipated any reasonably immediate use of plaintiffs' land for O & R purposes. Under these circumstances, the zoning classification given plaintiffs' land serves no public purpose and most certainly deprives the plaintiffs' land of considerable value. Chicago Title & Trust Co. v. City of Harvey, 30 Ill2d 237, 239, 241, 195 NE2d 727 (1964).

 Courts have often stated that the validity of a zoning ordinance as applied to a specific piece of property depends on the sum total of the particular facts found in each case. First Nat. Bank & Trust Co. of Evanston v. County of Cook, 15 Ill2d 26, 31, 153 NE2d 545 (1958); Koplos v. City of Rockford, 62 Ill App2d 268, 272, 210 NE2d 629 (1965). The loss in value to plaintiffs' land is not, in itself, sufficient to justify setting aside an ordinance as unreasonable. Koplos v. City of Rockford,

73

supra. When, however, the sum of the numerous factors considered together show that there is no reasonable basis in the public welfare for requiring plaintiffs to suffer such a loss, the presumption as to the validity of the ordinance is overcome. Marquette Nat. Bank v. County of Cook, 24 Ill2d 497, 501, 502, 503, 182 NE2d 147 (1962) ; Krom v. City of Elmhurst, 8 Ill2d 104, 115, 116, 133 NE2d 1 (1956). Where the gain to the public is small as compared with the hardship imposed upon the owners of the land by a certain zoning restriction, no valid basis exists for the exercise of the police power. First Nat. Bank & Trust Co. of Evanston v. County of Cook, 15 Ill2d 26, 31, 153 NE2d 545 (1958) ; Northern Trust Co. v. City of Chicago, 4 Ill2d 432, 438, 123 NE2d 330 (1954). We hold that the trial court was correct in finding that the plaintiffs had sustained their burden in establishing the invalidity of the O & R zoning ordinance as applied to their property. La Salle Nat. Bank of Chicago v. County of Cook, 12 Ill2d 40, 47, 48, 145 NE2d 65 (1957).

The defendant has also argued that the plaintiffs' land was equally suitable for single-family residential development. Such fact, if true, would not be determinative of any issue in this case. When the plaintiffs first sought to have their property rezoned, it was zoned for single-family residential use. Had the property remained so-zoned, the validity of such zoning, measured by the standards to which we have referred, would properly have been an issue in determining whether the plaintiffs' petition was rightly denied. By the time this matter came to trial, however, the legislative body had already made a determination as to the classification of this property. It had decided that it was in the interest of the general welfare that this land be zoned O & R—not single-family. ██ What the plaintiffs are attacking in this court is the denial of their petition seeking multiple-dwell-

74

ing use. What they must challenge is the validity of the existing zoning as applied to their land and not the validity or suitability of any other prior or possible alternative zoning classifications. The presumption favoring the validity of the zoning ordinance applies only to the existing legislative determination and not one which that body itself had previously determined to no longer be in the public interest. It is neither the province nor the duty of the courts to assume the role of a zoning body and determine the most appropriate or suitable zoning for a parcel of land. Treadway v. City of Rockford, 24 Ill 2d 488, 493, 182 NE2d 219 (1962).

The defendant relies on the Treadway case as indicative of the situation in this case. It argues that because the trial court held the O & R zoning invalid as applied to plaintiffs' land, it reverted or "remained" in its prior single-family zoning classification. This is not the case, however. The amending ordinance was general in that it did not apply solely to the property in question. It rezoned several parcels in this general area to O & R use. As a part of the amending ordinance, it was provided that all other ordinances in conflict with the provisions hereof "are hereby repealed." The trial court decreed that the classification of plaintiffs' property as "G-1, Office, Research and Compatible Use" under the zoning ordinance, was void. It made no finding that any other part of the amending ordinance, including the repeal of inconsistent ordinances, was void. The effect of the decree was to leave the property "unzoned." Sinclair Pipe Line v. Village of Richton Park, 19 Ill2d 370, 377–379, 167 NE2d 406 (1960); Harshman v. City of DeKalb, 64 Ill App2d 347, 352, 212 NE2d 146 (1965).

Insofar as the trial court decreed that the single-family zoning restriction was void as applied to plaintiffs' land, its decree was obiter, dicta and invalid; and the further part of the decree which provided that

75

"The defendant is hereby ordered to permit the said portions of plaintiffs' property to be used for multiple-family dwellings under the classifications 'F' of the Highland Park Zoning Ordinance . . . ," is likewise improper and void in that it is too broad. Thereby, the court assumed the legislative function of determining the ultimate zoning classification of the property in question. Reeve v. Village of Glenview, 29 Ill2d 611, 616, 617, 195 NE2d 188 (1963) ; Harshman v. City of DeKalb, supra, 352, 353. The most that a court may do after declaring an existing zoning ordinance void as applied to certain property is to find that the specific use contemplated by the owner is reasonable and may be permitted.

Under such circumstances, the court may frame its decree in the light of the evidence before it with reference to the specific proposed use; and may decree such contemplated use to be a reasonable one. Such decree neither impinges upon the legislative function, nor in effect leaves the property unzoned, with its potential problem of further litigation due to further rezoning by the municipality; and it limits plaintiffs' use of the land to that contemplated and indicated by the record. Sinclair Pipe Line v. Village of Richton Park, supra, 379; Harshman v. City of DeKalb, supra.

In the case at bar, the plaintiffs presented evidence as to the nature of the apartment complex they intended to construct on these premises. The decree of the trial court should be framed with reference to the evidence of this intended use and permit such use only, rather than any permitted under the applicable multiple-family zoning restriction. If the court finds that such evidence is not sufficient to enable it to intelligently frame its decree, it should hear additional evidence pertinent to such use.

That part of the decree of the trial court which declared the existing zoning void, as applied to the property in

question, is affirmed; and that part of the decree which adjudged the single-family zoning restriction void as applied to plaintiffs' land, and which ordered the defendant to permit the said portions of plaintiffs' property to be used for multiple-family dwellings under the "F" classification of the zoning ordinance, is reversed; and the cause is remanded to the trial court with directions to frame its decree pertaining to the permissive use of the land in question with reference to the evidence of plaintiffs' contemplated use and to hear further evidence in this regard, if necessary.

Affirmed in part and reversed in part; and remanded with directions.

MORAN, P. J. and ABRAHAMSON, J., concur.