Charles G. Mutz and Mary K. Mutz, Plaintiffs-Appellants, v. Village of Villa Park, a Municipal Corporation, Defendant-Appellee.

Gen. No. 66–105.

Second District.

April 26, 1967.

Rehearing denied and opinion modified June 9, 1967.

Leonard Bosgraf, of Chicago, for appellants.

Kenneth S. Jacobs and Charles W. Spencer, of Villa Park, and Robert H. Wier, of Elmhurst, for appellee.

MR. PRESIDING JUSTICE DAVIS delivered the opinion of the court.

This is a declaratory judgment action to change the zoning of plaintiffs' property, under the zoning ordinance of the Village of Villa Park, from a R–3 single-family dwelling to a B–3 business classification, which would permit a gasoline service station use. While the suit was pending, the Village rezoned the plaintiffs' property and other similarly situated property to a R–4 two-family classification. After a bench trial, the court entered a final decree in favor of the Village and the plaintiffs appealed.

The plaintiffs' property is located at the southwest corner of Washington Street—which runs in an easterly and westerly direction—and Route 83—which proceeds in a northerly and southerly direction through the Village of Villa Park. It consists of lots 4 and 5, which are unimproved and front on Washington Street on a chord, a distance of 90.69 feet, and have an easterly boundary on Route 83 of 153.45 feet; and the east 50 feet of lot 1 and a small triangular part of lot 2, which lots front on Riverside Drive—the first street west of and parallel to Route 83.

Lots 4 and 5 were purchased by the plaintiffs in 1962 for the sum of $8,000. Plaintiffs reside in a home located on lots 1 and 2, which front on the east side of Riverside Drive. Lots 1 and 2 abut lots 4 and 5 on the east.

3

The first street south of and parallel to Washington Street is Madison Street: and Highland Avenue is the first street north of and parallel to Washington. In the block bounded by Washington Street on the north, Madison on the south, Riverside Drive on the west, and Route 83 on the east, the distance between Riverside Drive and Route 83 is 240 feet. The lots facing Riverside Drive have a depth of 150 feet, and lots 4 and 5 have a width of 90 feet when measured at a right angle to Route 83. The homes on the east side of Riverside Drive front westerly, and the rear of such homes and the attendant outbuildings face Route 83.

Madison Street is the southerly limits of the Village for a distance of a few blocks west of Route 83, except for an inverted L-shaped parcel of land which extends south of Madison Street along Route 83 to Jackson Street. The Illinois Central railroad tracks are its northerly limits for a distance of about eight blocks westerly from Route 83. The streets from the south to the north, which run in an easterly and westerly direction within the Village limits beginning at Jackson Street and proceeding northerly to the elevated railroad tracks of the Great Western Railroad just north of Park Boulevard, are: Jackson, Madison, Washington, Highland Avenue and Park Boulevard. And, the streets immediately westerly of and parallel with Route 83, are: Riverside Drive, Monterey and Oakland Avenues.

The property on the west side of Route 83, including that owned by the plaintiffs, is 90 feet in depth. It is vacant, from the elevated railroad tracks of the Great Western Railroad on the north, to a point on the south a short distance from Madison Street where certain homes are located, with the exception of one residence fronting on Park Boulevard.

North of the elevated railroad tracks, the property is zoned and used for industry. Further north—at the southwest corner of St. Charles Road and Route 83—

4

a truck weighing station, operated by the State of Illinois, is located; and at the northwest corner of that intersection, a gasoline service station is in operation.

Lauerence Kenyon, the Village Manager, testified that the Caliendos own the inverted L-shaped parcel of land which extends south of Madison Street along Route 83 to Jackson Street; and that a strip of this land 180 feet in depth, south of Madison Street, is zoned single-family, is vacant, and serves as a buffer between the Village single-family residential classification and the remainder of the Caliendo property to the south, which is zoned for commercial uses. He further testified that the part of the Caliendo tract which is zoned B–1—the inverted part of the L, less the 180-foot strip—adjoins other property outside the Village and within the County; and that this adjacent property to the south to Van Buren Street is all zoned B–1. A landfill operation is in progress on this land. Further south are certain properties, improved with large buildings, used for the following purposes: a commercial tennis club; Wilson's Horse Stable; a sewerage treatment plant; and land used for a sanitary landfill operation which is zoned Industrial in the City of Oakbrook Terrace.

The land uses on the east side of Route 83 from the south to the north, beginning at a point a little south of Madison Street as extended east of Route 83 and north to the elevated railroad tracks, are: Kieft Brothers (industrial use); Vogel-Peterson Co. (industrial use); Sunoco Service Station (business and commercial use); Ill. Contractors' Machinery, Inc. (industrial use); Power Equipment Co. (industrial use); Farley Equipment Co. (industrial use); L. E. Meyers Co. (industrial use); Oakbrook Animal Hospital (business and commercial use); Clark Service Station (business and commercial use); Elmhurst Sewage Plant (public and semipublic use); and Salt Creek Sanitary Dist., Villa Park (public and semipublic use).

5

With the exception of the 90-foot strip of property hereinafter described, abutting Route 83 on the west, which the Village rezoned as R–4 Limited Multiple-Family District on December 6, 1965, the area west of Route 83 for a distance of three blocks—which lies between the elevated tracks of the Great Western Railroad on the north and the south Village limits—is largely improved and is classified as single-family residential. The only other uses in this area are public and semipublic—being an elementary school and the DuPage County Easter Seal Center. And this same area west to the Village limits has no uses other than single-family residential, except for certain multiple-family uses and business uses along Park Boulevard. The multiple-family uses are located about three and one-half blocks west of Route 83, and the business uses about nine blocks west thereof.

Route 83 is heavily traveled. It has a traffic count of about 19,900 vehicles per day. Washington Street is a major thoroughfare which joins the Village and the City of Lombard. Lots 4 and 5 are low and subject to frequent flooding. However, the Village has offered the plaintiffs, and other lot owners similarly situated, the necessary fill to bring such lots to grade level, without cost.

Plaintiffs entered into a land purchase option, which was exercised on April 2, 1963, for the sale of the property in question to Humble Oil Company, subject to zoning, for the sum of $48,000. The Oil Company desires to improve the property with a residential-type, modern gasoline service station.

On October 9, 1962, the plaintiffs applied to the Village for rezoning of the site for use as a gasoline service station, and after a public hearing before the Plan Commission, their application was denied. On October 16, 1964, they filed this suit for declaratory judgment.

On December 6, 1965, the Village rezoned the plaintiffs' property, together with the entire heretofore de-

scribed 90-foot strip of property abutting Route 83 on the west, beginning about one-half block north of Highland Avenue and extending south approximately to Madison Street. Under this new ordinance, such property was changed from R–3 Single-Family Residence to R–4 Limited Multiple-Dwelling Classification.

The plaintiffs' theory of the case is that by reason of the character of the area and the location of the property abutting on Route 83—a high-speed four-lane freeway with heavy traffic—the subject property is unsuitable for residential purposes, but is suitable for a gasoline service station; that the existing ordinance represents an unreasonable and arbitrary exercise of the discretion vested in the Board of Trustees of the Village; and that the zoning ordinance is invalid insofar as it precludes the development of a gasoline service station on the property.

The defendant contends that by reason of the character of the plaintiffs' property and the area surrounding it, to permit it to be used for a gasoline service station would be very deleterious to the surrounding residential uses and would constitute "spot-zoning"—the isolated inconsistent and contradictory use of land in relationship to its surroundings.

The Village further contends that the Zoning Ordinance at issue here is not invalid in that there has been no discrimination against the plaintiffs; that the exercise of the legislative power by the Village was not aribitrary; and that the evidence in the trial court showed that there was justification for a legitimate difference of opinion as to the reasonableness of the ordinance and, therefore, the court properly refused to substitute its judgment for that of the Board of Trustees of the Village—the legislative branch of the governmental unit in question.

It would serve no useful purpose to reiterate here the oft-repeated factors to be considered in determining

7

whether a given zoning ordinance is invalid as applied to particular property. See: Myers v. City of Elmhurst, 12 Ill2d 537, 543, 544, 147 NE2d 300 (1958); La Salle Nat. Bank of Chicago v. County of Cook, 12 Ill2d 40, 46, 47, 145 NE2d 65 (1957); Hoffmann v. City of Waukegan, 51 Ill App2d 241, 244, 201 NE2d 177 (1964). Such factors will be referred to herein insofar as they are relevant to the determination of this case.

■■ We recognize that the zoning ordinance adopted by the Village is presumed valid, and the burden of showing it unreasonable and oppressive as applied to plaintiffs' land, rested upon them. Camboni's, Inc. v. DuPage County, 26 Ill2d 427, 432, 187 NE2d 212 (1963); First Nat. Bank of Lake Forest v. County of Lake, 7 Ill2d 213, 225, 130 NE2d 267 (1955); Fiore v. City of Highland Park, 76 Ill App2d 62, 71, 221 NE2d 323 (1966). In challenging the ordinance's validity as applied to their property, the burden was on the plaintiffs to overcome this presumption, and to prove by clear and convincing evidence that the ordinance was unreasonable and unrelated to public health, safety or welfare. Bennett v. City of Chicago, 24 Ill2d 270, 273, 274, 181 NE2d 96 (1962); Fiore v. City of Highland Park, supra; Hoffmann v. City of Waukegan, supra.

■■ Due to this presumption, if it appears from all of the evidence that there is justification for a legitimate difference of opinion as to the reasonableness of the ordinance, the legislative judgment of the Village must then be upheld. Urann v. Village of Hinsdale, 30 Ill2d 170, 175, 195 NE2d 643 (1964); First Nat. Bank of Lake Forest v. County of Lake, supra, 226; Fiore v. City of Highland Park, supra; Bowler v. Village of Skokie, 57 Ill App2d 321, 325, 207 NE2d 117 (1965). However, the fact that there is a difference of opinion among the witnesses—lay and expert—, does not mean that the court must find that the reasonableness of the ordinance is debatable and, thence, uphold the ordinance.

8

In cases of this nature, a court must expect differences of opinion. It is for the court to determine from all of the facts whether the differences of opinion are reasonable and justifiable. Myers v. City of Elmhurst, supra, 544; La Salle Nat. Bank of Chicago v. County of Cook, supra, 47.

 To sustain the validity of a zoning classification, it must bear a substantial relation to the public health, safety, comfort, morals or general welfare. Marquette Nat. Bank v. County of Cook, 24 Ill2d 497, 501, 502, 182 NE2d 147 (1962); First Nat. Bank & Trust Co. of Evanston v. County of Cook, 15 Ill2d 26, 31, 153 NE2d 545 (1958); Fiore v. City of Highland Park, supra, 71, 72. Within these limitations, the fixing of zoning lines is a matter of legislative discretion. Since zoning must begin and end somewhere, there will necessarily be different classifications on either side of a given boundary line. However, the existence of such difference in itself does not render the limitations on the use of property near the boundary line in a more restricted district unreasonable or invalid. Lapkus Builders, Inc. v. Chicago, 30 Ill2d 304, 310, 196 NE2d 682 (1964); Mundelein Estates v. Village of Mundelein, 409 Ill 291, 294, 99 NE2d 144 (1951).

 Expert witnesses testified on behalf of both plaintiffs and the Village. While the testimony and opinions of the respective witnesses varied considerably, each expert witness offered substantial reasons to support his position. In considering the validity of a given zoning ordinance, each case must be decided on the sum total of its attendant facts. De Bruler Homes v. County of Lake, 78 Ill App2d 177, 183, 222 NE2d 689 (1967); Fiore v. City of Highland Park, supra, 73. In the case at bar, the trial judge could well have concluded that the R–4 zoning classification given to the 90-foot strip of vacant property along Route 83, which permitted the erection of duplex housing units thereon, was a residen-

9

tial transitional use; that such use would serve as a residential buffer between the R–3 single-family classification to the west and the business uses to the east; and that the R–4 classification should prevail over the B–3 business classification which the plaintiffs sought in order to locate a gasoline service station on their property.

■ Likewise, the court could properly have found that the B–3 classification, which would permit such service station on the plaintiffs' property, would constitute an unwarranted business intrusion into an area which was residential in character; and that in the area in question, Route 83 was a proper demarcation between residential and business uses. The evidence firmly established the residential character of the area immediately north, south and west of plaintiffs' property. The most that could be said for the plaintiffs' proof was that it presented a fairly debatable question as to the reasonableness of the Ordinance. Under these circumstances, the question must be resolved in favor of the determination of the zoning agency in the absence of a clear abuse of its power. Urann v. Village of Hinsdale, supra; Fiore v. City of Highland Park, supra.

■ The loss in value of plaintiffs' land is not, in itself, sufficient to justify setting aside the ordinance as unreasonable. Any financial disadvantage which plaintiffs may suffer was self inflicted, since the property was zoned R–3, a single-family classification, when they purchased it. De Bruler Homes v. County of Lake, supra, 184; Fiore v. City of Highland Park, supra, 73.

■ Plaintiffs have failed to discharge their burden of overcoming the presumption that the ordinance in question is valid. They have failed to show that their property is unsuited for multiple-residential development. The evidence is not clear and convincing that the existing R–4 zoning as applied to the property in question is arbitrary, unreasonable and does not bear a reasonable relation to public health, safety and welfare. It ap-

10

pears that there is at least room for a legitimate difference of opinion concerning the reasonableness of the zoning classification and, therefore, the legislative judgment must be conclusive. Koplos v. City of Rockford, 62 Ill App2d 268, 273, 274, 210 NE2d 629 (1965).

We conclude that the proof in the instant case does not show such arbitrary or capricious action on the part of the Board of Trustees of the Village as to indicate an unconstitutional exercise of its zoning function. There is nothing in the record which would compel us to substitute our judgment for that of the legislative body whose action has been sustained by the trial court.

The judgment of the Circuit Court of DuPage County is therefore affirmed.

Judgment affirmed.

MORAN and ABRAHAMSON, JJ., concur.