CITIZENS NAT. BANK OF DOWNERS GROVE, as Trustee, *et al.*, Plaintiffs-Appellees, *v.* VILLAGE OF DOWNERS GROVE, Defendant-Appellant.

(No. 70-71;

Second District—December 3, 1970.

Schiff, Hardin, Waite, Dorshel & Britton, of Chicago, for appellant.

Corrigan, Mackay, Quetsch & O'Reilly, of Wheaton, (John R. Mackay, of counsel,) for appellees.

Mr. JUSTICE THOMAS J. MORAN delivered the opinion of the court:

The plaintiffs brought suit to have the defendant's zoning ordinance declared invalid as applied to the subject property. The trial court entered judgment for the plaintiffs and the defendant appeals.

The property is located on the northeast corner of Main Street and Warren Avenue, in the Village of Downers Grove. It lies immediately north of the Chicago, Burlington & Quincy Railroad tracks and is presently improved with a vacant, large brick building.

The plaintiff, as trustee, entered into a lease agreement with Shell Oil Company contemplating the erection and operation of a gasoline service station, subject to the acquisition of a conditional use permit.

In April, 1965, the defendant adopted a comprehensive zoning ordinance in which the property in question was zoned B-2, Business District —General Retail, which would have permitted the operation of a gasoline service station on the property. In May, 1966, the ordinance was amended so that the gasoline service stations within the zoning district were permitted only as conditional uses granted by the defendant after a required public hearing before the defendant's zoning board of appeals. The relevant portion of that amendment reads as follows:

"3.1-3 *Conditional Uses,* as follows:

a. Radio and television towers.

b. Automobile service stations, provided, however, that to protect the health, safety, and general welfare of the residents of the Village of Downers Grove, the following minimum conditions shall be complied with prior to the issuance of a conditional use permit for an automobile service station:

1. *Location.* No such use shall be located within two hundred (200) feet, measured along contiguous street frontages, of any place of public assembly such as but not limited to: churches, schools, hospitals, clinics, theaters, auditoriums, parks and playgrounds."

Plaintiffs applied to the zoning board of appeals, a hearing was held and the application denied. The plaintiffs thereafter commenced a suit for declaratory judgment. The trial court found that the zoning ordinance as applied to the subject property was unreasonable, arbitrary, oppressive, and confiscatory insofar as it prohibits the erection and operation of an automobile service station.

The defendant argues that the plaintiffs failed to introduce evidence of a clear and convincing nature which would overcome the presumption of validity of the ordinance involved, citing our case of *Whittingham v. Village of Downers Grove* (1968), 101 Ill.App.2d 166. Defendant also argues that plaintiffs produced little or no evidence on the factors generally cited as significant in determining the validity of a given zoning limitation: *e.g.*, the character of the neighborhood, the extent to which the value of the subject property is diminished by the limitation, the extent to which the removal of the limitation would depreciate the value of other property in the area, the suitability of the property for the zoned purposes, existing uses and zoning of nearby property, the length of time under the existing zoning that the property has remained unimproved (considered in the context of land development in the area), the relative gain to the public as compared to the hardship imposed on the individual, and the extent to which the ordinance promotes the health, safety, morals or general welfare of the public, *Hartung v. Village of Skokie* (1961), 22 Ill.2d 485; *Myers v. City of Elmhurst* (1958), 12 Ill.2d 537; *La Salle Nat. Bank of Chicago v. County of Cook* (1957), 12 Ill.2d 40; *Wehrmeister v. County of DuPage* (1957), 10 Ill.2d 604. No one factor is controlling but each must receive due consideration. *LaSalle Nat. Bank v. County of Cook, supra,* 47.

We believe the trial court did not err in finding the evidence introduced by the plaintiffs to be clear and convincing as to the above-mentioned factors. Testimony by witnesses for both plaintiffs and defendant established that the area immediately surrounding the subject property was zoned B-2, Business District-General Retail. Automobile service stations are permitted within the B-2 District, but only after conditional use permit has been obtained. The defendant claims an automobile service station would be incompatible with existing uses and zoning of nearby property. Yet existing uses in the area include only a few businesses of the prime retail category. Most of the uses were of a service nature, *i.e.*, realty firms, restaurants, chamber of commerce, answering service, etc.

The defendant argues that the trend in the area is to high grade retail establishments "of pedestrian-oriented shopper traffic" and away from businesses which rely on automobile traffic. The zoning ordinance, however, does not bear this out. Among the various permitted uses in the B-2 district are drive-in banking facilities, automobile parking garages, motels, restaurants and others, all of which could be built without a conditional use permit and all of which depend upon automobile traffic for their trade. Furthermore, an automobile service station is now in operation one block north of the subject property, albeit as a non-

conforming use. Plaintiffs' evidence clearly established the compatibility of the proposed service station with the surrounding area.

The defendant contends that the subject property is suitable for the zoned purpose and that the plaintiff had failed to establish otherwise. However, we are not faced with an application for a variance or special use permit. Automobile service stations can be a permitted use within the B-2 district if the conditional use is granted; therefore, plaintiffs need not show the subject property to be unsuitable for the zoned purpose in such a case.

Defendant next argues that plaintiffs had made no showing of diminished value, citing *Lapkus Builders, Inc. v. Chicago* (1964), 30 Ill.2d 304, 310. There it was stated that purchasers, acquiring property with the expectation of using it for a purpose not permissible under current zoning restrictions, should not expect loss resulting from denial of the proposed use to be a persuasive argument in securing the change. That case is not applicable here as we are dealing with an application for a conditional use within a proper zoning district and not with applications for changed zoning, variances, or amendments to zoning. Plaintiff's real estate appraiser testified that the value of the subject property with a service station erected on it would be $100,000.00 and its value for the other uses permitted in the B-2 zoning category is $75,000.00.

The further argument that the public has much to gain from the denial of the conditional use as compared with the hardship imposed on the individual is not born out by the evidence. The defendant's own aerial photograph shows the business area north of the railroad tracks, which consists of a two block area, to be immediately adjacent to a large residential area. Plaintiffs' witnesses testified that the subject property was in a good location to serve that area. The fact that the subject property is a readily accessible property on Main Street (which is four lanes wide, has a high traffic volume, and parallel parking), the fact that it is convenient to the railroad station (so that those who commute would have the service station available to them during the day should they want to leave their cars for servicing), and the fact that there are very few service stations in the downtown area, were further reasons for plaintiffs' claim that the highest and best use of the property is a service station.

■■ The effect, if any, that the proposed change would have on surrounding property values is another factor to be considered by the court. Defendant's evidence was that the erection of a service station would have a detrimental effect; plaintiffs' evidence was that it would have no effect if erected as planned. This conflict was for the trier of facts to determine, and we are of the opinion that the court's conclusion was not against the manifest weight of the evidence in this respect.

The last of these factors concerns the extent to which the ordinance, as applied against these plaintiffs, promotes the health, safety, morals, or general welfare of the public. Defendant argues that general welfare and safety are promoted by the development of a pedestrian-oriented business district; that such a district is being developed here; and that a gasoline service station is an impediment to that development. As we have previously stated herein, the ordinance as presently drawn does permit uses which are traffic-oriented. If the defendant is attempting such a development, its own zoning ordinance should reflect the fact. But the ordinance singles out only one of the uses which may be classified as traffic-oriented for the conditional use requirement. Others of the same classification are still permitted. This does not reflect a trend away from traffic-oriented businesses in areas zoned B-2.

■■ We find that the decree of the trial court is not against the manifest weight of the evidence. Plaintiffs produced clear and convincing evidence to the trial court on all of the factors mentioned. Defendant attempted to discredit plaintiffs' expert witness on planning and zoning for his alleged lack of familiarity with the subject area. Yet, that witness testified that he had made a field study of the property in 1967 and had prepared plaintiffs' Exhibit No. 1, a land use and zoning map of the immediate area, which had been checked and rechecked to reflect changes since that time. He had made a final on-site inspection of the property only a few days before the trial. Contrasted with this, defendant's expert planning and zoning witness had been hired the day before trial and had devoted approximately one hour to reviewing the subject property.

■■ Defendant's final argument is that the plaintiffs have failed to comply with minimum conditions set forth in the ordinance, in that (1) the driveways as proposed are 35 feet wide instead of the maximum width of 25 feet; and (2) the subject property is within 200 feet of a place of public assembly, the railroad passenger boarding platform. The ordinance also requires that a traffic study be made. In the instant case, the traffic study revealed that 35 feet would be a safe width for the driveway cuts and the recommendation was incorporated in the site plan. The maximum width set forth in the ordinance is a general limitation which can be overcome in a specific instance by a showing that the interests of public safety and welfare are being served.

■■ The testimony concerning the location ordinance makes its interpretation difficult at best. The meaning of "measured along contiguous street frontages" is unclear and capable of several interpretations. However, the Court will not construe this portion of the ordinance against the plaintiffs, since the defendant has admitted a prior rezoning of a tract of

land (in 1968) allowing the erection of an automobile service station within 166 feet of another Burlington railroad passenger boarding platform. The defendant cannot now claim the importance of this limitation.

While this case was pending, the plaintiffs filed motion to strike portions of the Reply Brief, to assess costs for the additional abstract filed and for attorney's fees in relation thereto. The motions were taken with the case. That portion of the motion to strike certain exhibits attached to the Reply Brief is allowed, the balance of the relief prayed for in the motions of the plaintiff are denied.

For the reasons above set forth, the judgment of the trial court will be affirmed.

Judgment affirmed.

DAVIS, P. J., and ABRAHAMSON, J., concur.