Michael J. Duggan *et al.*, Plaintiffs-Appellants, *v.* The County of Cook, Defendant-Appellee—(The Board of Education of School District No. 227, Cook County, *et al.*, Intervenors, Defendants-Appellees.)

(No. 58983;

First District (4th Division)—January 16, 1974.

Robert D. Boyle, of Chicago, for appellants.

Bernard Carey, State's Attorney, of Chicago (Jerome S. Schain, Assistant State's Attorney, of counsel), for appellee.

Leonard Bosgraf and Klein, Thorpe, Kasson & Jenkins, both of Chicago, for intervenors.

Mr. JUSTICE BURMAN delivered the opinion of the court:

In this action the plaintiffs, Elmer Marquardt and LaVerne Marquardt, the legal owners and Michael J. Duggan, the contract purchaser and proposed developer, filed an application before the Zoning Board of Appeals of Cook County to have a 147 acre farm rezoned or reclassified from the R3 Single Family Residence District to the B5 General Commercial District and to obtain a special use for a mobile home park, a sewage treatment plant, and a community well. After a public hearing, the Zoning Board of Appeals recommended to the Cook County Board of Commissioners that the application for said uses be granted. Subsequently, the Board of Commissioners rejected the recommendation of the Zoning Board and denied the application.

On July 12, 1972, plaintiffs filed a complaint for declaratory judgment seeking to have the current R3 single family zoning classification of the subject property declared invalid and unenforceable and to have the proposed mobile home park development allowed. The defendant, County of Cook, filed its answer. Thereafter, without objection, Illinois Tool Workers, Inc., an adjoining property owner on the west, intervened. Over objection of the plaintiffs, the Board of Education of School District No. 227 and No. 159, within which the subject property is located, were allowed to appear and intervene. After a trial the court found that "under the totality of all the evidence the plaintiffs have failed to establish by clear and convincing evidence that the Cook County Zoning Ordinance as it applies to plaintiffs' property is arbitrary and unreasonable and without substantial relation to the public health, safety, morals and welfare." Plaintiffs appeal from this adverse finding of the trial court.

Plaintiffs contend in this appeal that the ordinance is arbitrary, confiscatory, and violative of plaintiffs' rights and that the finding of the

trial court is against the manifest weight of the evidence. They also contend that the trial court improperly allowed the intervention of the two school districts and placed undue emphasis on the position of the school districts in reaching its decision.

The defendants, the County of Cook, School Districts No. 227 and No. 159, and Illinois Tool Works, Inc., contend in response that: plaintiffs failed to overcome the presumption of validity attaching to the zoning ordinance; plaintiffs failed to sustain their burden of proving that the denial of the requested rezoning and special use by the County Board of Commissioners was arbitrary and unreasonable; the denial of the special use for a trailer park is a valid exercise of the legislative authority vested in the commissioner; plaintiffs failed to show that their property is not suitable for the purpose for which it is zoned; the Circuit Court did not commit reversible error in allowing the school districts to intervene and did not place undue emphasis on the position of the school districts in reaching its decision; and the decision of the trial court is supported by the weight of the evidence.

For purposes of the issues raised, the Cook County Zoning Ordinance, article VIII, section 8.3, "Permitted Uses," as amended in 1968, permits single family residences with a minimum lot area of 20,000 square feet in the R3 classification. (Article VIII, Section 8.5A—3.) Article IX, section 9.4—5, "Special Uses—B5 District" allows a mobile home park as a special use in a general commercial district. Article X, section 10.4—1, "Special Uses—M1 District" allows a mobile home park as a special use in a restricted manufacturing district.

■■■ We initially recognize that the ordinance under attack is presumed valid and the burden is upon plaintiffs to establish its invalidity by clear and convincing evidence. Where there is room for a fair difference of opinion concerning the reasonableness of a particular zoning classification the legislative judgment will be respected and sustained. *Fox v. City of Springfield,* 10 Ill.2d 198, 139 N.E.2d 732.

■■ However, as stated in *Fiore v. City of Highland Park,* 76 Ill.App.2d 62, 71, 221 N.E.2d 323, 328, "the fact that there is a difference of opinion among the witnesses—lay and expert—, does not mean that the court must find that the reasonableness of the ordinance is debatable and, hence, uphold the ordinance. In cases of this nature, a court must expect differences of opinion. It is for the court to determine from all of the facts whether the differences of opinion are reasonable and justifiable. [Citations.]"

■■ Furthermore a zoning classification must bear a substantial relation to the public health, safety, comfort, morals or general welfare to be upheld. (*Marquette National Bank v. County of Cook,* 24 Ill.2d 497, 501,

182 N.E.2d 147, 150.) Where the gain to the public is small as compared to the hardship imposed upon the owners of the land by a certain zoning restriction, no valid basis exists for the exercise of the police power. *First National Bank & Trust Co. v. County of Cook*, 15 Ill.2d 26, 31, 153 N.E.2d 545, 548.

With these general principles in mind, we have carefully examined the entire record. Since the validity of each zoning ordinance must be determined on its own facts and circumstances (*La Salle National Bank of Chicago v. County of Cook*, 12 Ill.2d 40, 46, 145 N.E.2d 65, 69), we have considered the specific facts and circumstances revealed by the record peculiar to the subject property in reaching our conclusion (see *Glassey v. County of Tazewell*, 11 Ill.App.3d 1087, 297 N.E.2d 235). We have also been mindful of certain facts recognized by Illinois courts as being useful in determining the validity of a zoning ordinance. (*La Salle National Bank of Chicago v. County of Cook*, 12 Ill.2d 40, 46-47, 145 N.E.2d 65, 69.) Our analysis, which is outlined below, compels us to a different result from that of the trial court, and we respectfully disagree with that court's determination that the zoning ordinance is valid as it applies to the subject property.

We first review some pertinent facts. The Marquardts, as owners, entered into a contract with plaintiff Duggan for the sale of the subject property, a 147 acre farm located on the southwest corner of Ridgeland Avenue and the Penn Central Railroad right of way in Rich Township, Cook County, Illinois. The contract of sale is contingent upon a change in the zoning from the present R3 single family residence classification to a classification allowing a mobile home development. The subject site has been undeveloped, other than for farming, and has been owned by the Marquardt family for 65 years. It had been listed for sale with a realtor for some time—approximately two years, according to Elmer Marquardt's trial testimony. Duggan, a land developer, is the only person who offered to buy—but, as noted, only if the zoning could be changed.

Certain of the unique physical characteristics of the property are of considerable importance. The property is bounded on two sides, the north and south, by railroad tracks, on the west by property zoned M2 (General Manufacturing District) and currently under development for such purposes, and on the east by a four lane highway, Ridgeland Avenue. An oil pipe easement owned by the Shell Oil Company runs along the west end of the property. A creek traverses the property and approximately 30 acres, or 15 to 20 per cent of the gross acreage, are not usable for construction in their present state due to the flood plain. The property is not located in any sanitary district and no sewer is available.

Nor is there any public water supply available. The construction of a sewage treatment plant, approved by the Illinois Environmental Protection Agency, is part of Duggan's proposed development. The installation of two wells to bring water to the site is also a part of the development.

From the evidence in the record, including the testimony of numerous witnesses for both plaintiffs and defendants, we first deem it fair to state that the farmland is not economically suitable for development as zoned, *i.e.*, for single family residences. Michael Duggan, the contract buyer, who is a land developer and building contractor, was of the opinion that it would not be economically feasible to develop the subject land with single family residences. He based this opinion first on the fact that, since the present zoning requires a minimum lot area of 20,000 square feet per site, the flood plain would limit the construction of single family home sites on the property to a total of 440. The proposed trailer park would consist of approximately 850 mobile homes. Duggan also considered the absence of sewer and water services an important factor. John Lydon, a real estate appraiser, called as a witness by plaintiffs, testified that the highest and best use the property could be put to would be a mobile home park as proposed. He stated that a development of this site under the present R3 classification allowing 20,000 square feet per building is economically unfeasible for many detailed reasons including those cited by plaintiff Duggan.

William McCann, a licensed real estate broker, testifying on behalf of the defendants, explained also that the property is undulating, has a stream running through it, and that approximately 35 acres are in the flood plain, leaving about 113 acres of usable land. In his opinion, the highest and best use would be for industrial purposes and the property should be rezoned for industrial use. When asked "In your opinion, could the subject property be economically developed for single family residence purposes as presently zoned?" he replied: "I believe realistically it would be borderline, but I believe it could be." Rolf Campbell, a land planner, also called as a witness by defendants, agreed with McCann that the highest and best use of the land would be for industrial purposes. Although he stated that the premises could, in his opinion, be developed with single family residences, he again felt that this was not the best use for the property. We feel that under the totality of the evidence plaintiffs have sufficiently established that the property is not economically suitable for development as presently zoned.

A second consideration in support of our conclusion that refusing the proposed change is unreasonable is the difficulty experienced by the owner Marquardt in selling the property. The property has long been

vacant and undeveloped, except for the farming use to which it has been put by Marquardt. His uncontradicted testimony reveals that he had listed the property for sale with a realtor for about two years, had posted a "for sale" sign on the property for a year, and that plaintiff Duggan was the only person who made any offer to purchase the property. This offer was contingent upon the proposed changing in zoning.

Furthermore, as the above testimony of the experts reveals, there seems to be a consensus that the "highest and best use" of the property would not be for the development of single family residences in conformity with the present zoning. The only real dispute, therefore, seems to be whether the site should be developed as proposed, for a mobile trailer park, or as an industrial district. In this regard we note that no offer was made to purchase the land for industrial or single residence use. Both of defendants' witnesses who expressed an opinion that the property might be developed as zoned testified on cross-examination that they were unaware of Marquardt's inability to sell the property under the present zoning classification. Their opinion that the "highest and best use" of the property would be industrial was made with the same lack of knowledge about the marketability of the property.

We next consider the evidence relating to the existing uses and zoning of nearby properties and the effect the proposed development would have on them. The adjoining property to the west is owned by the Illinois Tool Works, Inc., one of the intervening defendants, and is currently zoned and being developed for industrial use. Immediately west of this industrial development, approximately one-half mile west of the subject site, in Will County, is the multi-family development of Prestwick. Much of the other property immediately surrounding the subject site and separated from it on the north and south by railroads and on the east by Ridgeland Avenue is currently zoned R3, but also undeveloped and used only for farming.

Lydon, the real estate appraiser appearing on behalf of plaintiffs, testified that the proposed development would have a beneficial effect on the whole area. McCann, the real estate appraiser appearing on behalf of defendants, felt that it would be difficult to sell property in the immediate area after the development had taken place, and that a "wait and see" attitude would be adopted by those in the market. He also testified, however, that he saw no material effect on the Illinois Tool Works property to the west. Campbell, a land planner testifying for defendants, envisioned an adverse effect on adjacent parcels because of the proposed development. He explained, however, that the vacant property nearby would develop anyway in time, and not as presently zoned (R3), but for industrial purposes, which he felt was the best use. He did not detail

his reasons why he felt the proposed development would have an adverse effect on the Illinois Tool Works property. Reynolds, Manager of the Property Department of Illinois Tool Works, felt that an adjacent mobile home development would not be in the company's "best interests." Similarly, he testified that the company would not want to be located next to other industrial developments, schools, shopping centers, and commercial centers. Merrion, the sales manager for the Prestwick residential development one-half mile west of the subject site, felt that the proposed trailer park would not have much effect on the Illinois Tool Works property. He sees a depreciating effect on the Prestwick property, but he also stated that other changes in use or zoning have already had the same effect.

This evidence indicates to us that the proposed use does not fly in the face of present uses and zoning of nearby property, and any depreciating effect the development might have on neighboring property is not clearly established. And in any event, depreciation in value of surrounding property would not outweigh the substantial hardship sustained by plaintiffs by virtue of the restrictive zoning ordinance. As stated in *Pioneer Trust & Savings Bank v. County of McHenry*, 41 Ill.2d 77, 85, 241 N.E.2d 454, 459, "if the gain to the public is small when compared with the hardship imposed upon the individual property owner by the restriction of the zoning ordinance, no valid basis for an exercise of the police power exists."

The record further discloses that plaintiffs have amply demonstrated the reasonableness of the proposed development. In addition to the evidence discussed above regarding the suitability of the property for development as presently zoned, the existing uses and zoning of nearby properties, and the proposed development's effect on these properties, we note also the testimony by Elmer Shipley, a mobile home planning and development expert and one of plaintiffs' witnesses, that there is a great need for mobile trailer parks in the area. Lydon, the appraiser, testified that the development of the site as planned would be an economic stimulus to the area. The developer has secured the approval of the Illinois Environmental Protection Agency for the provision of sewage facilities. We will bring water to the site by installing two wells. While the Cook County Zoning Ordinance allows a density of 17 or 18 units per acre for a mobile trailer park, the proposed plan calls for a density of 5.7 units per acre.

The final question thus becomes whether the plaintiffs have sufficiently established that the zoning ordinance is arbitrary and unreasonable and without substantial relation to the public health, safety, comfort, morals and welfare (*Marquette National Bank v. County of Cook*, 24 Ill.2d 497,

501, 182 N.E.2d 147, 150), and whether, under all the evidence, the relative gain to the public is small as compared to the hardship imposed on the property owner *First National Bank & Trust Co. v. County of Cook*, 15 Ill.2d 26, 31, 153 N.E.2d 545, 548.

In this regard we note that much of the hearings both before the zoning board of appeals and in the Circuit Court was devoted to the impact the development might have upon educational facilities—specifically the impact upon the Boards of Education of School Districts No. 227 and No. 159, who were allowed to intervene at trial. The plaintiffs initially objected to the intervention of the two school districts and now claim that the overruling of their objection by the Circuit Court was prejudicial error. With this contention we do not agree.

■■ The Illinois statute regarding intervention is found in Ill. Rev. Stat. 1971, ch. 110, par. 26.1. "This section was designed to liberalize intervention practice, and particularly to relax the requirement that the intervenor have a direct interest in the suit." (*Mensik v. Smith*, 18 Ill.2d 572, 590, 166 N.E.2d 265, 275.) It provides, *inter alia*, that a party may intervene of right "when the applicant is so situated as to be adversely affected by a * * * disposition of property * * * subject to the control or disposition of the court * * *." It further provides for intervention in the discretion of the trial court. We perceive no error by the trial court in its determination regarding the intervention of the school districts, and in view of our final disposition of the merits of the case, a more extensive analysis is unwarranted.

We do feel, however, as plaintiffs contend, that the trial court placed undue emphasis on the position of the school districts in reaching its decision. The evidence was at best inconclusive as to any adverse effect the development might have on the school districts by increasing the school population without contributing a proportionate amount of tax revenue. Representatives of the two school districts testified as to school budgets, attendance, income and the construction of additional school facilities. They testified that they did not possess facts to contest plaintiffs' presentation of the taxation and educational income to their districts presented at the trial as well as before the Zoning Board of Appeals. In summary, their testimony merely indicated an ever increasing cost of education suggested, in part, by new developments in the area.

The trial judge, in making his decision, pointed out that "[t]his is a close case, very close case," and later that the plaintiffs "made out a very, very strong case." He also indicated at one point that he did not "like particularly the shotgun approach of the school district." But in denying the post-trial motion of plaintiffs he stated:

"I may have given greater consideration to the school than I

should have. \* \* \* I gave consideration to the Illinois Tool and I gave consideration to the planners that talked. \* \* \* But I say, I will say that the testimony of the school people in this case had great weight with the court."

As stated in *First National Bank of Skokie v. Village of Skokie,* 85 Ill.App.2d 326, 339, 229 N.E.2d 378, 385, where the court also considered evidence offered by an intervening school board that it would be adversely affected by a proposed zoning change:

"[W]hile the school situation might be a factor to be considered in this kind of case, it cannot be conclusive. \* \* \* [A]dditional burdens on responsible governmental bodies may not properly justify otherwise unreasonable, arbitrary, and discriminatory restrictions on the use of private property.

We feel that the interest of the school districts in the present litigation likewise does not outweigh the hardship to the plaintiffs nor justify the unreasonable and arbitrary restrictions on the use of plaintiffs' property. We perceive no other public interest which would be adversely affected by the allowance of the proposed development.

The above quoted language from the *First National Bank of Skokie* case was also cited with approval in *Glassey v. County of Tazewell,* 11 Ill.App.3d 1087, 297 N.E.2d 235, a case similar to the instant case in other respects. In *Glassey* plaintiffs entered into an option agreement for the purchase of 150 acres of land. The land was zoned agricultural. Plaintiffs applied for a special use permit for a mobile home park. The Zoning and Planning Committee of the County Board recommended its approval. The Board of Supervisors then, without a hearing (as the Board of Commissioners in the case at bar), voted to deny the permit. The Circuit Court entered judgment in favor of the plaintiffs. The Appellate Court affirmed, finding as we do here that the restriction was unconstitutional and that the proposed use was reasonable and should be permitted.

■■ Likewise in *Pioneer Trust & Savings Bank v. County of McHenry,* 41 Ill.2d 77, 241 N.E.2d 454, the right of plaintiffs to develop a mobile home park on 33 acres of vacant land was upheld. There the Illinois Supreme Court held as we do here that the evidence showed that the proposed use would have no appreciable effect on adjacent properties, that the denial of the proposed use would in no way benefit the public health, safety, morals, or welfare, and that there would be substantial economic hardship to the plaintiffs resulting from such denial. The refusal to rezone the property for use as a trailer park was therefore found to be arbitrary and unreasonable.

We reemphasize in closing that the Cook County Zoning Board of

Appeals, whose "Findings and Recommendations" are also a part of the record, recommended after a public hearing that the proposed zoning change and special use be permitted. Although its recommendation is not binding, it must be accorded proper weight. *Talarico v. County of Cook,* 2 Ill.App.3d 47, 50, 275 N.E.2d 776, 778.

In summation then we find, in reviewing the record in its entirety, that the judgment of the Circuit Court is manifestly against the weight of the evidence. We hold that the plaintiffs satisfactorily sustained their burden of showing that the present zoning ordinance as applied to the subject site is arbitrary and unreasonable and that the denial of the proposed zoning change and special use is likewise unreasonable.

We note, however, that in its written recommendation that the proposed use be allowed, the Zoning Board of Appeals also recommended conditions and restrictions to be imposed upon plaintiffs. These conditions must be adhered to.

Accordingly, we reverse the judgment of the Circuit Court and remand for further proceedings in a manner not inconsistent with this opinion.

Reversed and remanded with directions.

DIERINGER and JOHNSON, JJ., concur.