MORRIS COMMUNITY HIGH SCHOOL DISTRICT No. 101 *et al.*, Plaintiffs-Appellants, *v.* MORRIS DEVELOPMENT COMPANY *et al.*, Defendants-Appellees.

(No. 74-28; ▮▮▮▮▮▮▮

Third District—November 22, 1974.

John W. Hynds, of Hynds & Hynds, of Morris, for appellants.

John V. Hanson, of Morris, for appellees.

Mr. JUSTICE ALLOY delivered the opinion of the court:

Morris Community High School District No. 101 and two other school districts, plaintiffs-appellants, appeal to this court from an order of the Circuit Court of Grundy County dismissing the complaint of plaintiffs-appellants on the motion of defendants, Morris Development Company and Ford City Bank.

The complaint filed in this cause challenged the approval by the Morris city counsel of a final plat for a planned unit development (hereinafter designated "PUD") which was to be built by a developer. The complaint also seeks the dedication of land or payment of money by the developer for school purposes in accordance with a new city of Morris ordinance.

From the record made in this cause it appears that in the early part of 1971, the developer applied to the city council for approval of preliminary plans for its Parklake Village PUD project. The city council approved the preliminary plans in November 1971, and approval of final plans was made the following May in 1972. Thereafter, in November of 1972, the city council of Morris adopted what is referred to as the "School Site Donation Ordinance." The relevant part of this ordinance is as follows:

> "As a condition of approval of * * * final plat of a planned unit development, each * * * developer of a planned unit development will be required to dedicate land for school sites, to serve the immediate and future needs of the residents of the development, or make a cash contribution in lieu of actual land dedication, or a combination of both * * * in accordance with the following criteria and formula."

The final plat for Parklake was approved by the city council in April 1973, but compliance with the new school dedication ordinance, ostensibly, was not required by the council. Plaintiffs school districts, within whose boundaries the Parklake project lies, attempted to persuade the council by petition to revoke the previous approval and apply the ordinance, but the council refused to act in response to the petition.

The complaint in this cause sought a declaration requiring the developer to comply with the ordinance or, in the alternative, that the final plat approval be declared null and void. It was also alleged, as a basis for such request that the approval be declared null and void, that the city council and the developer had not followed the application and approval procedures set forth in the Morris PUD ordinance.

In allowing the motion to dismiss the complaint as insufficient, the trial court found that the application of the school site ordinance to the developer was within the discretion of the city council, as developer had filed its initial application well before the passage of the ordinance.

The court also declared that in absence of fraud, corruption, or abuse of discretion, the court was without power to review the decision of the council.

The major issues on appeal before us there, therefore, are (1) the question of the standing of the plaintiffs school districts to challenge the validity of the final plat approval and (2) whether or not the trial court properly dismissed the complaint as insufficient. There is also a supplementary contention that the order of the trial court dismissing the city of Morris as a party to the action (which order was entered over objection of both plaintiffs and defendants), was improper.

The first contention is related to whether or not the plaintiffs have standing to maintain the action. The developer-defendant vigorously contends that the school districts have no standing to engage in any zoning litigation on the basis of the precedent of *Dato v. Village of Vernon Hills*, 62 Ill.App.2d 274, 210 N.E.2d 626 (1965). We do not believe that the *Dato* case is a precedent requiring dismissal of the action in the instant case. In *Dato*, a landowner was challeging the rezoning of his property. The school district there sought to intervene as a matter of right to support the rezoning, and alleged therein that if the plaintiff was successful there would be an unusual influx of new students with resulting burdens to the school district. The court there noted a recent statute permitting school districts to appear in zoning hearings, but held that school districts had no right to intervene in resulting litigation without further permission by action of the State legislature.

■■ A case treating the same issue such as *Duggan v. County of Cook*, 17 Ill.App.3d 253, 307 N.E.2d 782 (1974), found the interest of the districts to be insufficient to justify contesting in the courts alleged arbitrary and unreasonable zoning classifications. The net results of *Dato* and the other case cited is that school district interests in zoning litigation are relevant, but not controlling, and that school districts may be permitted to intervene, but are not entitled to intervention as a matter of right in absence of specific statutory authorization.

The cause before us, however, is not limited in nature to a typical zoning dispute. Plaintiffs maintain that the city council, in approving developer's final plat, disregarded an ordinance which must be followed by the council if the plat approval is to be valid. No contention is made that a zoning classification is improper.

Developer also contends that any interest the school districts might have under the school-site-donation ordinance would disappear if the relief sought (finding that the plat approval is void) is granted. It is asserted that without plat approval, there can be no dedication of land or payment of money to the school districts. While true, so far as it goes,

this is not a complete answer to the problem before us. If plat approval is sustained, the school districts will be required to provide facilities for the new residents through other means than on a site or with funds provided by developer. If the plat approval is declared void, the school districts may be relieved of this burden, simply because developer will then be required to reapply (when the school site dedication ordinance could clearly be applicable). If developer abandons the project, there would be no need for new educational expenditures as a result of facilities generated by developer. It is thus apparent that the question of vitiating the plat approval will directly and vitally affect the situation of the plaintiff districts.

The school districts certainly have an enforceable interest in the school-site-donation statute. That ordinance does not give the city council any discretion, but requires all developers and subdividers who build within the city to dedicate land or pay money to the school districts for educational use. So far as the language of the ordinance is concerned, there is no exception to such requirement. The ordinance anticipates future development which would place on the districts new and substantial burdens, and it presumes that it would be unfair to cast a disproportionate share of the tax burden on the existing residents for the educational facilities required by new facilities created by developers. Thus, the school-site ordinance creates certain rights in the school districts. Any land dedicated by the developer is to be conveyed directly to the school district involved, and the district can receive any money paid upon written request to the city. If the district does not immediately use any dedicated land for school purposes, however, the city may use the land as a park (but the school district has a right to terminate that use on written notice).

■■ We must conclude that the ordinance thus creates certain obligations for developers and subdividers and corresponding rights in school districts as beneficiaries of the legislative action. Developer notes that, had it merely refused to make a required dedication or payment under the ordinance, whatever interests plaintiffs might have would be more "vested" in character. The situation before us, however, is not totally different. The circumstance that the city council has refused to apply an ordinance, which on its face is applicable, does not, by reason of such refusal, destroy the interests of the school districts. Unless there is affirmative exemption by the terms of the ordinance itself or by amendment, the ordinance is binding upon the parties to this action and the school districts are not without remedy. In the pleadings filed, plaintiffs should be construed to have "such a personal stake in the outcome of

the controversy as to assure that concrete adverseness which sharpens a presentation of issues upon which the court so largely depends for illumination  *  *  *." (*Baker v. Carr*, 369 U.S. 186, 204, 7 L.Ed.2d 663, 678, 82 S.Ct. 691.) It is our conclusion, therefore, that plaintiffs have standing in the present action.

▆▆ We also recognize that the city council had and still has discretion by ordinance or amendment to exempt developers who may have filed initial applications prior to the time of the effective date of the school-donation ordinance. No such exemption was included within the scope of the ordinance itself, and the only action which points to a disposition not to apply the school ordinance arises from the refusal of the city council to require enforcement of the ordinance on the application of the school districts. There was, however, no definitive and conclusive action on part of the city which indicated that the terms of the ordinance were not to be applied to organizations which had initiated developments prior to the effective date of the ordinance.

▆▆▆ While the courts have no power to inquire into the wisdom of an ordinance and are not concerned with the mere policy of legislation, we have no guidelines here as to why the city council refused to apply the ordinance. The ordinance is binding unless modified or amended. As stated in 8 McQuillin on Municipal Corporations, pp. 472-473 (3rd ed.): "A municipal legislative body must substantially follow the regulations it has itself established relative to zoning. It cannot deviate from existing regulations or make exceptions therefrom on behalf of individuals." Existing ordinances may not be modified, suspended or amended by a resolution or inaction of the city council. (*Phillips Petroleum Co. v. City of Park Ridge*, 16 Ill.App.2d 255, 262, 149 N.E.2d 344.) Normally, an ordinance which does not vest any discretion in the village officer in granting an exemption from the application of that ordinance requires that the ordinance be substantially complied with. See *Treadway v. City of Rockford*, 24 Ill.2d 488, 496, 182 N.E.2d 219, and *People ex rel. Simpkins v. Village of Kincaid*, 26 Ill.App.2d 68, 73, 167 N.E.2d 690.

On the question of sufficiency of the complaint on other issues, plaintiffs allege not only that the final plat approval cannot stand unless developers are required to comply with the school site dedication, but also, the procedures undertaken do not comply with the city of Morris' PUD ordinance. Procedures are therein set out for obtaining approval from the City to build a planned unit development. Various zoning districts in the city are available for PUDs and the approval of the PUD application consists, according to the Act, of an ordinance approving the PUD as a special use in a particular district. (It is alleged that no ordi-

nance was adopted.) The developers are required to submit detailed information to the city so that the public interest and proper land use may be upheld with respect to PUD projects.

Some apprehension also has been expressed by plaintiffs that if the school districts do not maintain an action in the courts to require that the developer or organizations in the same position comply with the PUD ordinance or other procedures, then no other party would protect the public interest when the municipality declines to act. They, therefore, contend that the school districts should be permitted to proceed on such issues. We do not agree that the school districts are required to become the paladins of the public in protecting against municipal inadequacy or failure of municipal authorities to act in the public interest. We have indicated that this objective can be readily accomplished in other ways such as accomplished in *City of Lockport v. County Board of School Trustees*, 2 Ill.App.3d 970, 276 N.E.2d 13. In that case we indicated that taxpayers, in an appropriate case, may intervene to carry on an action if it is clearly established that the municipality is not proceeding with an action in which the interests of the public may be affected seriously, and where the municipalities would normally represent the public.

■■ Another issue which has been raised is the action of the trial court in dismissing the city of Morris as a party to the action. The trial court dismissed the city on the ground that it was not a necessary party and that no allegations were directed towards or relief sought from the city. Plaintiffs here seek annulment of a resolution of the city council approving developer's final plat. The allegations of the complaint are largely directed toward council action at various times and concern the interpretation of various city ordinances. The cases seem to fall under the rule of *St. Clair Housing Authority v. Southwestern Bell Telephone Co.,* 387 Ill. 180, 56 N.E.2d 357, 359. In that case the housing authority and public utility were engaged involving underlying actions by the city of East St. Louis, and the Illinois Supreme Court held that the city was a necessary party, even though it appears that the city had never been a party nor did either of the litigants seek to make it a party. In the case before us, the city of Morris was named in the complaint and dismissed only over the objection of both parties to this appeal.

It appears that the city has a "substantial legal and beneficial interest in the matter being litigated" and "will be affected by the decree." (*St. Clair Housing Authority v. Southwestern Bell Telephone Co.*, 387 Ill. 180, 185, 56 N.E.2d 357, 359). Even if no affirmative relief is sought as against the city, it is still vitally concerned with matters involved in the litigation and the declaratory judgment statute under which plaintiffs

sue (Ill. Rev. Stat. 1973, ch. 110, par. 57.1) does not require any affirmative relief to be sought in order to obtain a declaration of the rights of the parties. We, therefore, believe that the trial court was in error in dismissing the City of Morris as a party at this stage of the litigation.

It is clear, therefore, that the complaint of plaintiff should not have been dismissed on the motion prior to hearing on the merits. So long as the issue with respect to the school-site-donation ordinance is not resolved, the standing of plaintiffs is clearly established. In the event, however, that such ordinance is amended to exempt persons or organizations in the situation of defendant developers by exempting applicants who have initiated applications for improvements of the character involved in this case prior to the effective date of the ordinance, then the status of plaintiffs will have changed, and plaintiffs would no longer have standing to continue with this action solely on the basis of asserted deficiencies in procedural matters relating to compliance with the PUD ordinance or zoning regulations. On this issue, the philosophy expressed in *Dato v. Village of Vernon Hills*, 62 Ill.App.2d 274, 210 N.E.2d 626, would apply.

■■■ As indicated in the *Dato* case, school districts have no standing in courts to conduct litigation subsequent to administrative or legislative action in zoning or similar proceedings. In the *Dato* case the court observed that a school district derives its existence and powers wholly from the General Assembly. It has no inherent powers and the courts have determined that school districts should not be permitted to engage in any litigation resulting from disputes in the nature of zoning in which the school districts may have an interest resulting only from the circumstances that a development is planned in the school district. The rationale, presumably, of such rule is that if school districts were permitted to intervene, as a matter of right, there could hardly be any zoning proceeding in which the school districts could not litigate in the courts on the basis of a contention that the school districts might be affected in one way or another. Once the school districts have brought their views to the attention of the particular legislative or administrative body concerning the zoning or similar procedures, they have fulfilled the requirements, as outlined in the *Dato* case, and any resulting intervention or the conduct of resulting litigation in the courts is not warranted. Therefore, we conclude that the continuing right of the school districts to maintain the instant action is wholly dependent upon the school-site-donation ordinance and whether or not it has been or is amended to exempt the developer. In the present posture of the case, the action of the trial court in dismissing the complaint was improper.

· The order of the Circuit Court of Grundy County dismissing the

complaint in this cause as to defendants Morris Development Company and Ford City Bank, individually and as trustee, is reversed and the order of the Circuit Court dismissing the city of Morris as a party in this action is likewise reversed, and this cause is remanded to the Circuit Court of Grundy County for further proceedings not inconsistent with the views expressed in this opinion.

Reversed and remanded with directions.

SCOTT, P. J., and STOUDER, J., concur.